UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTEBAN GONZALEZ,

Plaintiff,

-against-

Warden DENNIS W. HASTY, et al.,

Defendants.

05 Civ. 6076 (RMB) (RLE)

**DECISION AND ORDER**

## I. Background

On or about June 30, 2005, Esteban Gonzalez ("Plaintiff"), filed a complaint ("Complaint") against Warden Dennis W. Hasty ("Hasty"), Warden Gregory Parks, Associate Warden Robert Perkins, Associate Warden James Sherman, Associate Warden Randall Powers, Special Investigative Agent John Feeney, Captain Nelson Aponte, Captain Salvatore Lopresti, Lieutenant Michael Barry, "Lieutenant Gurino," Deputy Captain James Veneroni, Lieutenant Daniel Ortiz, Lieutenant Steven Barrere, Lieutenant Juan Rodriguez, "Psychologist Dr. Kawerski," Dr. Parry Hess, and Lieutenant Douglas White (collectively, "Defendants"), in their individual capacities pursuant to the U.S. Supreme Court decision in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"). (Complaint at 2-3.) Plaintiff alleges two claims: first, that from February 28, 1999 to July 24, 2001, while Plaintiff was incarcerated at the Metropolitan Correctional Center ("MCC"), Hasty and the other Defendants employed at the MCC ("MCC Defendants") "agreed, confederated and conspired . . . to keep plaintiff unlawfully confined to [a Special Housing Unit ("SHU")] under harsh conditions" and failed "to hold Segregation Review hearings concerning plaintiff in order to determine his continued need for SHU confinement" (the "MCC Claim"). (Complaint at 4-5.)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/07

Second, Plaintiff claims that after he was transferred to the Metropolitan Detention Center ("MDC"), from July 24, 2001 to May 11, 2002, Hasty and the other Defendants employed at the MDC ("MDC Defendants") placed Plaintiff "in Administrative Detention . . . without specific reason or explanation," and "without the required procedures, including but not limited to administrative and/or disciplinary hearings," and that each of the MDC Defendants "condoned, sanctioned and ratified these unlawful actions" (the "MDC Claim"). (Complaint at 5-6.) Plaintiff argues that the actions of the MCC Defendants and MDC Defendants "deprived plaintiff of his rights under the First, Fifth and Eighth Amendments of the United States Constitution." (Complaint at 6.)[1]

On or about July 19, 2006, Defendants filed a motion to dismiss ("Motion to Dismiss") pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(3) and (12)(b)(6), arguing that Plaintiff's claims "are barred by the [three-year] statute of limitations" and that "venue over [some of Plaintiff's] claims does not lie in this district." (Memorandum of Law in Support of the Represented Federal Defendants' Motion to Dismiss the Complaint ("Def. Mem."), at 5-6.)[2]

On February 26, 2007, United States Magistrate Judge Ronald L. Ellis, to whom the matter had been referred, issued a thorough Report and Recommendation ("Report"), recommending that the Court dismiss the Complaint. Judge Ellis concluded that Plaintiff's "allegations of a conspiracy at the MCC . . . would be barred by the three year statute of limitations," and "any conspiracy to deprive [Plaintiff] of his constitutional rights at the MDC would constitute a new conspiracy, and the Southern District would not be the proper venue."

---

[1] Plaintiff filed the Complaint pro se but obtained counsel prior to responding, on August 21, 2006, to Defendants' Motion to Dismiss.

[2] Defendants also state that Robert Perkins, who Plaintiff names as a defendant, is deceased, and that Defendants are "not aware of any former or current [Bureau of Prisons] employee" with the name Lieutenant Gurino or Psychologist Dr. Kawerski "who worked at the MCC at the relevant time." (Def. Mem. at 3 n.2-4.)

(Report at 7.) Judge Ellis also found that "the complaint fails to establish a provable claim." (Report at 6.)

On or about March 13, 2007, Plaintiff filed objections to the Report ("Objections"), arguing that (1) under the "continuing tort doctrine," Plaintiff's claims are not time-barred; (2) venue is proper because "there is a sufficient connection between the offending conduct and the district in which the action has been filed"; and (3) "the Plaintiff's complaint contains specific factual allegations to support his causes of action." (Objections at 6, 10, 15.) On or about March 27, 2007, Defendants opposed Plaintiff's Objections. (See Response of the Represented Federal Defendants to Plaintiff's Objections to the Report and Recommendation of Magistrate Judge Ellis ("Opposition").)

**For the reasons set forth below, the Court adopts the Report in all material respects and grants Defendants' Motion to Dismiss.**

## II. Legal Standard

The Court "shall make a de novo determination of those portions of the report or specified findings or recommendations to which an objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b); Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). As to any portions of a magistrate judge's report to which no objections have been made, the district judge may adopt all findings that are not clearly erroneous. See Thomas v. Arn, 474 U.S. 140, 149 (1985).

## III. Analysis

The facts as set forth in the Report are incorporated herein by reference unless otherwise noted. The Court has conducted a de novo review of, among other things, the Complaint, the

Motion to Dismiss, Plaintiff's Memorandum in Opposition to Motion to Dismiss Under Rule 12(b) ("Response"), the Reply Memorandum of Law in Further Support of the Represented Federal Defendants' Motion to Dismiss the Complaint, the Report, Plaintiff's Objections, Defendants' Opposition, and applicable legal authorities, and concludes that the determinations and recommendations made by Magistrate Judge Ellis are supported by the record and the law in all material respects. See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). Plaintiff raises substantially the same arguments that were brought before Judge Ellis and does not provide a basis for departing from the Report's conclusions and recommendations.[3]

**(1) Time Bar of MCC Claim**

Plaintiff acknowledges that "a three year statute of limitations is applicable" to his claims but argues (unpersuasively) that "Plaintiff relies upon the continuing tort doctrine in support of its challenge to this basis for dismissing the lawsuit." (Objections at 10.) Defendants argue that "the limited circumstances in which courts have applied the 'continuing violation' theory are not present here." (Opposition at 13.)

Application of the continuing violation doctrine "delays the point at which the statute of limitations begins to run" on a claim "until the last . . . act in furtherance of it." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997). "As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." Trinidad v. New York City Dep't of Corr., 423 F. Supp. 2d 151, 165 (S.D.N.Y. 2006) (internal citations omitted); see also Cotz v. Mastroeni, No. 05 Civ. 2991, 2007 U.S. Dist. LEXIS 13019, at *62 (S.D.N.Y. Feb. 23,

[3] As to any portion of the Report to which no objections have been made, the Court concludes that the Report is not clearly erroneous. See Pizarro, 776 F. Supp. at 817. Any of Plaintiff's Objections not specifically addressed in this Order have been considered de novo and rejected.

2007) ("[c]ourts in the Second Circuit view continuing violation arguments with disfavor, and the doctrine's applicability outside of the Title VII or discrimination context is uncertain"). Plaintiff's argument that courts "have rarely dismissed on a Rule 12(b) basis, rather, reviewing the facts and permitting some discovery so as to ascertain whether there was, in fact, a valid cause of action," does not support application of the continuing violation doctrine. (Objections at 13); see Figueroa v. City of New York, 198 F. Supp. 2d 555, 564 (S.D.N.Y. 2002) ("[b]ecause plaintiff . . . offers no compelling circumstances that would warrant application of the continuing violation doctrine, the doctrine does not apply").

Even assuming, arguendo, that Plaintiff had established "compelling circumstances" to apply the continuing violation doctrine, see Trinidad, 423 F. Supp. 2d at 165, the Complaint, which was filed May 31, 2005, would still be untimely by ten months with respect to the MCC Claim (which ripened no later than July 24, 2001 when Plaintiff was transferred out of the MCC). See AMTRAK v. Morgan, 536 U.S. 101, 113 (2002). Judge Ellis properly concluded that "[a]ny conspiracy to deprive [Plaintiff] of his constitutional rights at the MDC would constitute a new conspiracy," i.e. separate from the alleged MCC conspiracy, involving a different time period and a different group of Defendants (with the exception of Warden Hasty) and would not save Plaintiff's MCC Claim.[4] (Report at 7); see Morgan, 536 U.S. at 113 ("[e]ach discrete . . . act starts a new clock for filing charges alleging that act"); Taylor v. New York State Dep't of Corr., No. 03 Civ. 1929, 2004 U.S. Dist. LEXIS 25795, at *28 (S.D.N.Y. Dec. 22, 2004) ("any harm suffered by plaintiff at Fishkill could not be a 'continuation' of the harm suffered by

[4] Plaintiff's argument that the acts alleged in the Complaint constituted a single conspiracy led by Warden Hasty does not affect tolling of the statute of limitations. See Pearl v. City of Long Beach, 296 F.3d 76, 87 (2d Cir. 2002) ("accrual of a cause of action based on specific acts of which a plaintiff was aware cannot be postponed, nor can a limitations period be tolled, simply by alleging that the acts were taken pursuant to a conspiracy"); see also Singleton v. New York, 632 F.2d 185, 192 (2d Cir. 1980) ("[i]t is the wrongful act, not the conspiracy, which is actionable").

plaintiff at Sing Sing, and as a result, the statute of limitations period is appropriately measured from the latest Sing Sing 'incident' identified by plaintiff").[5] Plaintiff's "claims against the MCC should be dismissed under [Fed. R. Civ. P.] 12(b)(6) on statute of limitations grounds." (Report at 8.)

**(2) Improper Venue as to MDC Claim**

Plaintiff argues that venue is proper with respect to the MDC Claim pursuant to 28 U.S.C. § 1391(b)(2) which states that a claim is properly brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." (See Objections at 15.) Defendant argues that "Plaintiff fails to identify a single action of any of the MDC Defendants that was taken in this District." (Opposition at 20.)

Judge Ellis properly concluded that the MDC Claim "should be dismissed under 12(b)(3) for improper venue." (Report at 8.) None of the events giving rise to Plaintiff's MDC Claim occurred in this district. Rather, the MDC Claim should have been brought in the Eastern District of New York. See 28 U.S.C. § 1391(b)(2); In re Letter Rogatory, No. M13-72, 2001 U.S. Dist. LEXIS 13753, at *2 (S.D.N.Y. Sept. 7, 2001) ("the appropriate venue for this action is the Eastern District, and although this is just a short trip over the Brooklyn Bridge, any action in

---

[5] Defendants argue that Plaintiff's MDC Claim is untimely also because Plaintiff's "subsequent MDC detention ended on May 11, 2002" which was "more than three years before Plaintiff filed this action on May 31, 2005." (Opposition at 16.) Plaintiff argues that he "was compelled to exhaust his administrative remedies prior to filing his lawsuit," pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), which "had the effect of tolling the limitations period." (Response at 10 n.4); see 28 C.F.R. §§ 542.14-18 (allowing 160-230 days for exhaustion of grievances through the Bureau of Prisons Administrative Remedy Program, inclusive of all appeals); see also Sims v. Goord, 151 Fed. Appx. 12, 14 (2d Cir. 2005) ("we have not previously settled whether the statute of limitations for a civil rights claim by an incarcerated inmate should be tolled while the inmate exhausts administrative grievance procedures pursuant to the Prison Litigation Reform Act" and "[w]e need not resolve this question here"). The Court does not reach this issue because, as noted at paragraph (2) above, the Southern District of New York is not the proper venue for determination of the MDC Claim.

this Court beyond denying the application based on improper venue . . . could be declared invalid").

**(3) Factual Allegations Specified in the Complaint**

Because Plaintiff's MCC Claim is untimely and venue for Plaintiff's MDC Claim is improper, the Court need not address whether the allegations in the Complaint are specific enough to survive Defendants' motion to dismiss.[6]

**IV. Conclusion and Order**

For the reasons stated herein, the Report of Magistrate Judge Ellis is adopted in all material respects and Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) is granted. The Clerk of Court is respectfully requested to close this case.

Dated: New York, New York
March 27, 2007

RMB

**RICHARD M. BERMAN, U.S.D.J.**

[6] In light of Plaintiff's pro se status at the time he drafted the Complaint and two recent U.S. Supreme Court cases which "rejected judicially established pleading requirements on the principle that where the Federal Rules of Civil Procedure do not specify heightened pleading requirements, Rule 8(a)(2)'s liberal system of notice pleading governs," Toussie v. Powell, 323 F.3d 178, 185 n.3 (2d Cir. 2003); see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the allegations in the Complaint may well have been sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).