```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/28/2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESTEBAN GONZALEZ,

                Plaintiff,

   - against -

WARDEN DENNIS W. HASTY, et al.,

                Defendants.
------------------------------------------------------------X

05 Civ. 6076 (RMB) (RLE)

**OPINION & ORDER**

## I. Introduction

On May 31, 2005, Esteban Gonzalez ("Plaintiff" or "Gonzalez") filed a "Bivens" complaint ("Complaint"), alleging that from February 28, 1999 to July 24, 2001, while he was incarcerated at the Metropolitan Correctional Center in New York, NY ("MCC"), MCC Warden Dennis W. Hasty ("Warden Hasty" or "Hasty") and nine MCC officers and employees (the "MCC Defendants") "conspired . . . to keep [P]laintiff unlawfully confined to [a] Special Housing Unit ('SHU')," in violation of Plaintiff's constitutional rights. (Compl., filed May 31, 2005, ¶¶ 24, 33, 35.)[1] Plaintiff also alleges that, after he was transferred to the Metropolitan Detention Center in Brooklyn, NY ("MDC") on July 24, 2001, Warden Hasty, who became the warden at MDC on or about August 13, 2001, and four MDC officers and employees (the "MDC Defendants") "conspired" to keep Plaintiff unlawfully confined in MDC SHU "without specific reason or explanation," in violation of Plaintiff's constitutional rights. (Compl. ¶¶ 28, 34, 36.)[2] Plaintiff is suing each defendant in his individual capacity. (Compl. ¶ 16.)[3]

---

[1]    See infra pp. 5–10 for a chronology of Plaintiff's incarceration.

[2]    The United States Court of Appeals for the Second Circuit stated in its June 22, 2011 Opinion (discussed infra p. 3) that Warden Hasty "became the warden of MDC shortly before Gonzalez was transferred to that institution" on July 24, 2001. Gonzalez v. Hasty, 651 F.3d 318,

By Decision and Order, dated March 27, 2007, the Court adopted the February 26, 2007 Report and Recommendation of United States Magistrate Judge Ronald L. Ellis and dismissed the Complaint.  See Gonzalez v. Hasty, No. 05 Civ. 6076, 2007 WL 914238, at *2–3 (S.D.N.Y. Mar. 27, 2007).  The Court determined, as Judge Ellis had, that the three-year statute of limitations for Bivens actions expired on July 24, 2004 and barred Plaintiff's MCC conspiracy claim, and that any conspiracy to deprive Plaintiff of his constitutional rights at MDC would constitute a new conspiracy and should be litigated in the United States District Court for the Eastern District of New York where those alleged events occurred.  See id. at *3.  The Court found with respect to Plaintiff's MCC conspiracy claim that "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loathe to apply it absent a showing of compelling circumstances," and "[e]ven assuming, arguendo, that Plaintiff had established 'compelling circumstances' to apply the continuing violation doctrine, the Complaint, which was filed May 31, 2005, would still be untimely by ten months with respect to the MCC Claim (which ripened no later than July 24, 2001 when Plaintiff was transferred out of the MCC)."  Id. at *2–3 (internal citations and quotation marks omitted).  The Court did not reach the issue of whether the statute of limitations was tolled while Plaintiff was exhausting his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e, principally because the Second Circuit "'ha[d] not previously settled whether the statute of limitations for a civil

---

320 (2d Cir. 2011).  Following the Second Circuit's remand, this Court allowed the parties to conduct additional discovery (see infra p. 4), which appears to show that Hasty became warden of MDC on August 13, 2001.  (See Defs. Local Rule 56.1 Statement of Undisputed Facts, dated June 15, 2012 ("Defs. 56.1"), ¶ 8; Pl. Resp. to Defs. 56.1 Statement, dated July 25, 2012 ("Pl. 56.1"), ¶ 8.)

[3]     Familiarity with the facts of this case is assumed and those facts are incorporated herein by reference.

rights claim by an incarcerated inmate should be tolled while the inmate exhausts administrative grievance procedures.'" Id. at *3 n.5 (quoting Sims v. Goord, 151 F. App'x 12, 14 (2d Cir. 2005)).[4]

Plaintiff appealed the Court's March 27, 2007 Decision and Order and, on June 22, 2011, the Second Circuit vacated the Court's Decision and Order and remanded "with instructions that the [district] court determine when Gonzalez initiated his administrative proceedings and whether, based on that date, his MCC claims are timely." Gonzalez, 651 F.3d at 322. The Second Circuit held, for the first time, that "claims brought by an inmate under the [PLRA] are entitled to equitable tolling during the time period the inmate is exhausting his administrative remedies." Id. The Second Circuit also stated that, "[a]ssuming that Gonzalez's MCC claim accrued on July 24, 2001 (the date he was transferred out of the MCC), those claims are timely only if the three-year statute of limitations period was tolled for at least 312 days, since Gonzalez filed his complaint on May 31, 2005 and, absent tolling, the limitations period expired on July 24, 2004 (July 24, 2004 to May 31, 2005 = 312 days)." Id. at 324 n.4. The Second Circuit also directed that "if on reexamination of the entirety of [P]laintiff's claims [the district court] determines that venue for the MDC claims is still improper in the Southern District of New York, then it shall transfer Gonzalez's MDC claims to the United States District Court for the Eastern District of New York." Id. at 325.[5]

---

[4] The Court also dismissed from the action MCC Defendants Robert Perkins, Psychologist Dr. Kawerski, and Lieutenant Gurino who, according to Defendants, are not known to have "worked at the MCC [or MDC] at the relevant time" or are "deceased." Id. at *1 n.2; see (Mem. of Law in Supp. of the Represented Federal Defs.' Mot. to Dismiss, dated July 19, 2006, at 3 n.2–4); see also infra p. 11.

[5] Chief Judge Dennis Jacobs concurred in the Second Circuit's Opinion and stated that "it would not be premature to affirm the dismissal as to all of the defendants other than Warden

Following the Second Circuit's June 22, 2011 Opinion, and in order fully to comply with its mandate, this Court held conferences with the parties on August 9, 2011 and March 15, 2012 and also allowed for the re-opening of discovery regarding the issues singled out by the Second Circuit of when Plaintiff initiated his administrative proceedings and tolling. (See Hr'g Tr., dated Aug. 9, 2011, at 3:12–13, 8:8–9; Hr'g Tr., dated Mar. 15, 2012); see also Gonzalez v. Hasty, No. 05 Civ. 6076, 2012 WL 1711136, at *2 (S.D.N.Y. May 11, 2012).

On June 15, 2012, following the close of additional discovery, Defendants filed a Motion for Partial Summary Judgment and Transfer of Venue arguing that (1) Plaintiff's claims against the MCC Defendants are time-barred because: they accrued on May 2, 2000; the three-year statute of limitations is tolled for 197 days (i.e., until November 15, 2000); and, as noted, Plaintiff's Complaint was not filed until May 31, 2005 (i.e., one year and six months too late); (2) even assuming, arguendo, that Plaintiff's claims against the MCC Defendants accrued on July 24, 2001 when Plaintiff was transferred out of MCC, they would still be untimely because the three-year statute of limitations would have expired on July 24, 2004; and (3) Plaintiff's claims against the MDC Defendants "must" be transferred to the Eastern District of New York because it is "the only judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." (Mem. of Law in Supp. of Certain Defs.' Mot. for Partial Summ. J. and Transfer of Venue, dated June 15, 2012 ("Defs. Mem."), at 13–14, 18–19.)

On July 25, 2012, Plaintiff filed an opposition arguing that (1) Plaintiff's claims against the MCC Defendants accrued on May 11, 2002 when Plaintiff "was released from the SHU at

---

Hasty, on the alternative ground that the allegations of conspiracy are conclusory and perfunctory," and that "the conspiracy claims that link other officials and employees of the prison to the warden are wholly insufficient, and appear [to be] based on nothing but the fact that all of these people worked for Warden Hasty at some time or another." Gonzalez, 651 F.3d at 325.

4

MDC," and he had until August 2, 2005 to file his Complaint (which he did); (2) even assuming, arguendo, that Plaintiff's claims against the MCC Defendants accrued on July 24, 2001, they would be timely because the statute of limitations should be "tolled while Plaintiff was pursuing all . . . remedies," and "would not [have] beg[u]n to run until Plaintiff received actual notice of the [final] denial" of his last administrative remedy appeal which was "not sent directly" to Plaintiff. (Mem. of Law in Opp'n to Defs.' Mot. for Partial Summ. J. and Transfer of Venue, dated July 25, 2012 ("Pl. Opp'n"), at 3–5, 10–11.) Plaintiff also requests that the Court "transfer th[e entire] case to the United States District Court for the Eastern District of New York and/or deny Defendants' motion for partial summary judgment." (Pl. Opp'n at 2, 12.)

On August 6, 2012, Defendants filed a reply arguing, among other things, that Plaintiff's requests for administrative remedies (see infra at p. 7) "for alleged deprivations other than the one at issue in this litigation" are "irrelevant to this action, and in any event, do not affect the timeliness of Plaintiff's federal claim." (Reply Mem. of Law in Further Supp. of Certain Defs.' Mot. for Partial Summ. J. and Transfer of Venue, dated Aug. 6, 2012 ("Defs. Reply"), at 1.) Defendants also argue that "[t]he claims against Warden Hasty and the MDC Defendants must be transferred to the Eastern District because this Court will lack venue over them, pursuant to 28 U.S.C. § 1391(b), assuming it dismisses Plaintiff's claims against the MCC Defendants." (Defs. Reply at 9.)

The parties waived oral argument.

**For the reasons stated below, Defendants' Motion for Partial Summary Judgment and Transfer of Venue is granted.**

## II.    Background

The following facts appear to be undisputed:

5

(i) On March 2, 1994, Plaintiff was arrested for possession of a firearm after having previously been convicted of a felony and was placed into federal custody at MCC. See United States v. Gonzalez, No. 94 Crim. 134 (S.D.N.Y), ECF. Nos. 4, 16. On November 1, 1994, a jury sitting in the United States District Court for the Southern District of New York found Plaintiff guilty of one count of possession of a firearm after having previously been convicted of a felony. See id. On January 17, 1996, United States District Judge Whitman Knapp sentenced Plaintiff to 180 months' imprisonment notwithstanding Plaintiff's United States Sentencing Guidelines range of 235 to 293 months. See id., ECF No. 56. On April 14, 1997, the United States Court of Appeals for the Second Circuit affirmed Plaintiff's conviction but vacated the sentence and remanded for resentencing because "the district court provided no . . . explanation" for its departure from the applicable guidelines range. United States v. Gonzalez, 110 F.3d 936, 948 (2d Cir. 1997).

(ii) On February 28, 1999, while (still) incarcerated at MCC and awaiting resentencing, Plaintiff "repeatedly stabbed" a fellow inmate with a "knife-like object." United States v. Gonzalez, 00 Crim. 447, 2001 WL 1580233, at *1 (S.D.N.Y. Dec. 12, 2001). That same day, Plaintiff was placed in administrative detention in MCC SHU. (See Decl. of Crista Colvin, dated June 14, 2012 ("Colvin Decl."), ¶ 6 & Ex. 1.) On December 7, 2000, a jury sitting in the United States District Court for the Southern District of New York found Plaintiff guilty of assault with intent to do bodily harm, assault resulting in bodily injury, and possession of a prohibited object in prison. See Gonzalez, 2001 WL 1580233, at *1. On January 22, 2002, United States District Judge Denise L. Cote sentenced Plaintiff to 150 months' imprisonment to run "consecutively to any undischarged term of imprisonment." See id., ECF No. 81.

(iii) On October 17, 2003, Plaintiff's 1994 case was reassigned from Judge Knapp to former Chief Judge Michael B. Mukasey for resentencing. See Gonzalez, No. 94 Crim. 134, ECF No. 161. On September 6, 2006, Judge Mukasey sentenced Plaintiff to 210 months' imprisonment to run consecutively to the sentence imposed by Judge Cote on January 22, 2002. See United States v. Gonzalez, No. 94 Cr. 134, 2010 WL 1631496, at *1–3 (S.D.N.Y. Apr. 20, 2010). On August 29, 2008, the Second Circuit affirmed Judge Mukasey's sentence of 210 months but vacated his determination to impose the sentence consecutively to Judge Cote's sentence. See United States v. Gonzalez, 291 F. App'x 392, 395 (2d Cir. 2008). The Second Circuit held that it was "error" for Judge Cote to sentence Plaintiff to 150 months' imprisonment "to be served consecutively to his sentence for the 1994 conviction" because "at the time of sentencing [by Judge Cote] . . . , Gonzalez was not yet under a sentence for the 1994 conviction." Id. The Second Circuit stated that "Judge Mukasey recognized [that Judge Cote's decision to run her sentence consecutively to the 1994 conviction] was error," but nevertheless "decided to give effect to Judge Cote's conclusion." Id.

(iv) On October 7, 2008, Plaintiff's 1994 case was re-assigned to United States District Judge Jed S. Rakoff (as Judge Mukasey had retired) "to determine whether the sentence imposed . . . by [former Chief] Judge Mukasey should run concurrently or consecutively

6

        (in whole or in part) to the sentence imposed . . . by Judge Cote." Gonzalez, No. 94 Cr. 134, ECF No. 210; Gonzalez v. Hasty, 94 Cr. 134, 2010 WL 1631496, at *1 (S.D.N.Y. Apr. 20, 2010).

(v) On December 21, 2009 and January 11, 2010, Judge Rakoff conducted a hearing to determine whether the sentence imposed by former Chief Judge Mukasey should run concurrently or consecutively to the sentence imposed by Judge Cote as the Second Circuit had directed. See Gonzalez, 2010 WL 1631496, at *1. During the course of the hearing, the Government apprised Judge Rakoff that on June 25, 2009, during a search of Plaintiff's cell at the United States Penitentiary-Canaan in Waymart, Pennsylvania where Plaintiff had been housed, corrections officers discovered a "shank knife" "taped inside the flap of an accordion-style folder, contained in a box of legal materials stored beneath Gonzalez's bed." Id. at *1–2. In addition to Plaintiff's "knowing possession of a 'shank' knife," Judge Rakoff also noted that on March 26, 2008, Plaintiff assaulted another inmate at the United States Penitentiary in Lewisburg, Pennsylvania. Id. at *4. Judge Rakoff found that those facts "would have more than warranted the Court in making the 210-month sentence previously imposed by Chief Judge Mukasey totally consecutive to the sentence imposed by Judge Cote." Id. Nevertheless, Judge Rakoff "split the sentence, so that 105 months were made to run concurrent with, and 105 months consecutive to, the sentence imposed by Judge Cote." Id.

(vi) On May 5, 2010, Plaintiff appealed Judge Rakoff's sentence, and on March 24, 2011, the sentence was affirmed. See United States v. Gonzalez, 415 F. App'x 336, 337 (2d Cir. 2011).

(vii) Plaintiff filed some seventy-one (71) requests for administrative remedies while incarcerated at MCC and MDC. (See Colvin Decl. Ex. 2.)[6]

(viii) On May 2, 2000, Plaintiff filed his first request for administrative remedy challenging his detention in SHU. (See Colvin Decl. Ex. 4.) In his May 2, 2000 MCC administrative remedy request, Plaintiff alleged that he had "been placed in . . . solitary confinement for no valid reason by order of Warden Hasty except to harass and punish [him] . . . without due process of law" ("May 2, 2000 Request"). (See Colvin Decl. ¶ 12 & Ex. 4.)

(ix) Six of the seventy-one requests for administrative remedies (including the May 2, 2000 Request) appear to relate directly to Plaintiff's SHU confinement. (See Colvin Decl. Ex. 2; Pl. Opp'n Ex. A.) The other sixty-five requests sought, among other things, "outdoor recreation," "sneakers," television privileges, "photocopies," "preventative dental appliances," that his "cell window be unfrosted," a "new mop and cleaning supplies," "independent light switches," and "thermal underwear, sweatsuit, hat and gloves," etc. (See id.)

---

[6] Plaintiff filed at least twenty-nine (29) requests while at MCC and at least forty-two (42) requests while at MDC. (See Colvin Decl. Ex. 2.)

(x)     Warden Hasty denied Plaintiff's May 2, 2000 Request on May 22, 2000, stating, among other things, that Plaintiff's placement in SHU was due to his "record of behavior while housed at MCC New York[, which] demonstrate[d] that [he] require[d] more oversight than can be provided in any other unit within this institution." (See Colvin Decl. ¶ 12 & Ex. 5.) On May 26, 2000, Plaintiff filed a Form BP-10 Regional Office Administrative Remedy Appeal challenging Warden Hasty's denial of his May 2, 2000 Request. On June 23, 2000, the BOP Regional Office denied Plaintiff's appeal. (See Colvin Decl. ¶ 13 & Ex. 2.)

(xi)     On July 18, 2000, Plaintiff filed a Form BP-11 Central Office Administrative Remedy Appeal challenging the June 23, 2000 Regional Office determination. On November 15, 2000, the BOP Central Office denied Plaintiff's appeal, stating that Plaintiff was being "housed in [SHU] due to security concerns," and that the MCC staff properly followed Program Statement 5270.07, Inmate Discipline and Special Housing Units, in placing Plaintiff in SHU. (Colvin Decl. ¶ 14 & Exs. 6–7.)

(xii)     Of the twenty-nine requests for administrative remedies Plaintiff filed while incarcerated at MCC, it appears that six (including the May 2, 2000 Request) were appealed to the BOP Central Office and fully exhausted. The remaining twenty-three requests appear not to have been exhausted. (See Colvin Decl. Ex. 2; Pl. Opp'n at 10.)[7]

(xiii)     Of the six exhausted MCC administrative grievances, three (including the May 2, 2000 Request) appear to relate directly to Plaintiff's SHU confinement. (See Colvin Decl. Ex. 2.) The May 2, 2000 Request is discussed supra at p. 7. Plaintiff's request filed on May 23, 2000 alleged that he had been improperly held in administrative segregation "under conditions that are atypical." (Colvin Decl. Exs. 2, 12–13.) And, Plaintiff's request filed on June 21, 2000 requested that Warden Hasty "audit and review DHO hearings." (Id.) The BOP Central Office denied these three requests on November 15, 2000, November 15, 2000, and September 8, 2000, respectively. (See Colvin Decl. Ex. 2; Pl. Opp'n at 10 & Ex. A.)

---

[7]     "BOP's procedural rules . . . create[] a four-step administrative grievance system for prisoner complaints. The first step require[s] inmates to 'present an issue of concern informally' to the prison staff so that they c[an] attempt to resolve it. If the issue remain[s] unresolved, the inmate c[an] submit 'a formal written Administrative Remedy Request' to the institution staff member designated to receive such requests. The inmate c[an] appeal any adverse decision made at that stage to the Regional Director, and then to the BOP's General Counsel." Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (internal citation and quotation marks omitted).

    According to Defendants, the BOP "does not keep track of the dates on which inmates submit the[] informal resolution forms, and the forms themselves are not stored centrally, and thus it is not known whether or when [P]laintiff filed a Form BP-8 in connection with []his administrative remedy request[s]." (Defs. Mem. at 4 n.5; Colvin Decl. ¶ 7 & Ex. 2.)

(xiv)  The three other exhausted MCC administrative grievances were filed on May 3, 2000, May 3, 2000, and July 8, 2000 and sought, respectively, television privileges, relief from "illegal strip searches for outdoor recreation," and "disposable shaving razors." (See Colvin Decl. Ex. 2; Pl. Opp'n Ex A.) The BOP Central Office denied these requests on July 3, 2000, September 5, 2000, and November 23, 2001, respectively.

(xv)  On July 24, 2001, Plaintiff was transferred from MCC to MDC. (Defs. 56.1 ¶ 2; Pl. 56.1 ¶ 2; Colvin Decl. ¶ 6 & Ex. 1.)

(xvi)  Five of the six exhausted MCC administrative grievances were denied by the BOP Central Office prior to Plaintiff's transfer from MCC to MDC on July 24, 2001. (See Colvin Decl. ¶ 2; Pl. Opp'n at 10 & Ex. A.) Plaintiff's July 8, 2001 request—for "disposable shaving razors"—was denied by the BOP Central Office after Plaintiff's transfer and, as noted, was denied on November 23, 2001. (See Colvin Decl. Ex. 2; Pl. Opp'n at 10 & Ex. A.)

(xvii)  As noted, on August 13, 2001, Defendant Hasty became warden of MDC. (Defs. 56.1 ¶ 8; Pl. 56.1 ¶ 8.)

(xviii)  Plaintiff filed at least forty-two (42) requests for administrative remedies while he was incarcerated at MDC. (See Colvin Decl. ¶ 2; Pl. Opp'n at 10 & Ex. A.) Of these forty-two requests, three appear to relate to Plaintiff's SHU confinement. (See Colvin Decl. Ex. 2.) These three requests were filed on February 14, 2002, alleging that Warden Hasty "ha[d] no legitimate reason" to hold Plaintiff in MDC SHU; on February 22, 2002, alleging that no periodic reviews were being conducted regarding his incarceration in MDC SHU; and on February 24, 2002, alleging that the MDC psychologist's evaluation did not conform with the requirements of 28 C.F.R. § 541.22, and that a more detailed evaluation "would demonstrate that he should be released from the MDC SHU." (Colvin Decl. ¶¶ 18, 21, 24 & Ex. 14, 20, 28.)

(xix)  The three requests (discussed at ¶ xviii) were denied by the BOP Central Office on July 2, 2002, August 8, 2002, and June 20, 2002, respectively. (See Colvin Decl. ¶¶ 20, 23, 26 & Exs. 19, 25, 33.) The BOP Central Office stated that Plaintiff "posed a threat to the security and good order of the institution"; "the Warden and the Regional Director ha[d] accurately and thoroughly responded to [Plaintiff's] issue[s]"; and "formal reviews and evaluations [of Plaintiff's confinement] were conducted pursuant to policy," respectively. (Colvin Decl. ¶¶ 20, 23, 26 & Exs. 19, 25, 33.)

(xx)  The parties dispute when Plaintiff was released from MDC SHU. (Defs. 56.1 ¶ 2; Pl. 56.1 ¶ 2.) Defendants contend that Plaintiff was released from MDC SHU on April 15, 2002 (Defs. 56.1 ¶ 2), and Plaintiff contends that he was released on May 11, 2002 (Pl. 56.1 ¶ 2).

(xxi)  According to Defendants, "Plaintiff has been held in the [segregated housing units] at BOP correctional facilities"—apart from MCC and MDC—"for administrative detention

    and disciplinary segregation." This occurred, according to Defendants, both before Plaintiff's detention at MCC and after his release from MDC SHU. (<u>See</u> Defs. Mem. at 4 n.4 (citing Colvin Decl. ¶ 6 & Ex. 1).)

(xxii) Plaintiff is currently incarcerated at the United States Penitentiary-Canaan in Waymart, Pennsylvania. (<u>See</u> Colvin Decl. Ex. 1.) According to the BOP's website, Plaintiff is scheduled to be released on March 22, 2013. <u>See</u> USMS Register No. 23304-054, http://www.bop.gov/inmate_locator/index.jsp.

### III. Legal Standard

"Summary judgment is appropriate only if, construing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact remains to be resolved by a jury." <u>Kronisch v. United States</u>, 150 F.3d 112, 126 (2d Cir. 1998).

"<u>Bivens</u> claims . . . [that are] instituted more than three years after [the p]laintiff knew or should have known of the alleged constitutional violations" are time-barred. <u>Clavizzao v. United States</u>, 706 F. Supp. 2d 342, 347 n.7 (S.D.N.Y. 2009); <u>Chin</u>, 833 F.2d at 24 ("[S]ection 214(5) of the New York Civil Practice Law and Rules is the applicable statute of limitations for <u>Bivens</u> actions brought in federal court in New York State.").

"[I]n order for the continuing violation doctrine to apply, [a] plaintiff need[s] to show that . . . specific [defendants] committed at least one wrongful act within the statutory time period." <u>Gonzalez v. Wright</u>, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009). "Absent any allegations of wrongful conduct that could relate to conduct within the statutory time period, [a plaintiff's] claim against [a defendant is] . . . properly dismissed." <u>Shomo v. City of New York</u>, 579 F.3d 176, 184 (2d Cir. 2009).

Exhaustion of administrative remedies "is a condition that must be satisfied before the courts can act on an inmate-plaintiff's action." <u>Messa v. Goord</u>, 652 F.3d 305, 309 (2d Cir. 2011); <u>see</u> 42 U.S.C. § 1997e(a).

**IV.     Analysis**

Preliminarily, Dr. Kawerski, Robert Perkins, and Lieutenant Gurino who, according to Defendants, "are not known to have worked at the MCC or MDC [or are] deceased," are dismissed from the action. (Defs. Mem. at 1–2 n.1); see Guadagni v. New York City Transit Auth., No. 08 Civ. 3163, 2009 WL 750224, at *1 n.1 (E.D.N.Y. Mar. 19, 2009) (where defendants did "not exist"); see also Jones v. Siegfried Construction Co., Inc., 105 F.R.D. 491, 492 (W.D.N.Y. 1984) (dismissing "deceased" defendant).[8]

**(1)     Plaintiff's Claims against the MCC Defendants Are Untimely**

Defendants argue that Plaintiff's claims against the MCC Defendants are untimely because they accrued on May 2, 2000 when he "filed his first request for administrative remedy challenging his SHU placement"; the commencement of the three-year statute of limitations was tolled until (no later than) November 15, 2000 when the BOP Central Office "denied [Plaintiff's] administrative appeal"; and the limitations period expired on November 15, 2003, which was one year and six months before Plaintiff filed his Complaint on May 31, 2005. (Defs. Mem. at 14.) Defendants also argue that "the question of whether [the continuing violation doctrine] applies to [a] Bivens action . . . is open in this Circuit"; and even if it were applicable, "Plaintiff's timely claims against Warden Hasty and the MDC Defendants cannot revive his time-barred claims against the MCC Defendants." (Defs. Reply at 7–8.)

Plaintiff argues that his claims against the MCC Defendants are timely because the continuing violation doctrine applies and his claims accrued on May 11, 2002 when Plaintiff was

---

[8]     See also Gonzalez, 2007 WL 914238, at *1 n.1 ("Defendants also state that Robert Perkins, who Plaintiff names as a defendant, is deceased, and that Defendants are 'not aware of any former or current [Bureau of Prisons] employee' with the name Lieutenant Gurino or Psychologist Dr. Kawerski 'who worked at the MCC at the relevant time.'").

11

"released from the SHU at MDC"; the commencement of the three-year statute of limitations was tolled until August 2, 2002 when Plaintiff exhausted his final administrative remedy relating to his SHU confinement at MDC, and it expired on August 2, 2005; and Plaintiff timely filed his Complaint on May 31, 2005. (Pl. Opp'n at 4–5, 8.)

The Court finds that the three-year statute of limitations bars Plaintiff's claims against the MCC Defendants. See Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir. 1999). As the MCC Defendants contend, Plaintiff's claims against them accrued no later than May 2, 2000, when Plaintiff filed his first request for administrative remedy challenging his SHU confinement. See Kronisch v. United States, 150 F.3d 112, 123 (2d Cir. 1998). That is the latest date Plaintiff became "aware of the facts underlying the claim." Bakowski v. Kurimai, 387 F. App'x 10, 11 (2d Cir. 2003) ("[A] Bivens claim accrues on the date on which the plaintiff was aware of the facts underlying the claim.").

The limitations period is equitably tolled (for 197 days) from May 2, 2000 through November 15, 2000, the date when the BOP Central Office denied Plaintiff's May 2, 2000 Request. Gonzalez, 651 F.3d at 324; see (Colvin Decl. ¶¶ 4, 7). One hundred ninety-seven days of tolling is appropriate because Plaintiff was "complet[ing] the mandatory exhaustion process" during that time. Gonzalez, 651 F.3d at 324. The limitations period applicable to Plaintiff's claims against the MCC Defendants expired three years later, i.e., on November 15, 2003. See Tapia-Ortiz, 171 F.3d at 151–52. Because Plaintiff did not file his Complaint until May 31, 2005, his claims against the MCC Defendants are dismissed as time-barred. See Bakowski, 387 F. App'x at 11–12. That is, Plaintiff filed his Complaint 563 days too late.

Plaintiff's argument that "the action is timely as to all of the MCC [D]efendants under the continuing violation doctrine" is unpersuasive. (Pl. Opp'n at 3.) For one thing, the Second

12

Circuit has not yet addressed whether the continuing violation doctrine applies to a Bivens action.  See Barbarao v. United States ex rel. BOP FCI Otisville, 521 F. Supp. 2d 276, 281 (S.D.N.Y. 2007).  In its June 22, 2011 Opinion, the Second Circuit "decline[d] to decide . . . whether the continuing violation doctrine allows the two confinements [MCC + MDC] to be aggregated in order to preserve MCC claims that might otherwise have been lost absent prolonged tolling."  Gonzalez, 651 F.3d at 320 n.1.

Second, even assuming, arguendo, that the continuing violation doctrine were applied to a Bivens action, it would not save Plaintiff's claims against the MCC Defendants because Plaintiff has not alleged that "those specific individuals committed at least one wrongful act within the statutory time period."  Gonzalez v. Wright, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) ("[I]n order for the continuing violation doctrine to apply, plaintiff needed to show that those specific individuals committed at least one wrongful act within the statutory time period."); (see Compl. ¶¶ 18–29; Defs. Reply at 9 ("The only actions by Warden Hasty that fall within the limitations period took place when he was warden of the MDC.")); see also Shomo, 579 F.3d at 182; Amadi v. FCI Fort Dix Health Servs., 256 F. App'x 477, 480 (3d Cir. 2007).[9]  And, Plaintiff's argument that "[s]ince the action is timely as to defendant Hasty's actions at MCC under the continuing violation doctrine, it is also timely as to the other MCC [D]efendants" (Pl. Opp'n at 8) is also unpersuasive.  "[I]t is not enough to simply allege that someone committed a wrongful act within the statute of limitations period."  Crenshaw v. Syed, No. 10 Civ. 244, 2011

---

[9] As noted, in his concurrence to the Second Circuit's June 22, 2011 Opinion, Chief Judge Dennis Jacobs also stated that "it would not be premature to affirm the dismissal as to all of the defendants other than Warden Hasty, on the alternative ground that the allegations of conspiracy are conclusory and perfunctory. . . . [T]he conspiracy claims that link other officials and employees of the prison to the warden are wholly insufficient, and appear based on nothing but the fact that all of these people worked for Warden Hasty at some time or another."  Gonzalez, 651 F.3d at 325.

WL 2975687, at *4 (N.D.N.Y. Mar. 8, 2011) (emphasis in original); see Gonzalez, 665 F. Supp. 2d at 350; Shomo, 579 F.3d at 182.

The Court need not decide whether the continuing violation doctrine applies to Warden Hasty because he remains a defendant in this case. That is, Defendants appear to concede that Plaintiff's MDC claim against Hasty is not time-barred (see Defs. Reply at 9 ("Warden Hasty unquestionably took acts with respect to Plaintiff that are the subject of the instant complaint within the limitations period.")), and both parties agree that the remainder of this action should be transferred to the United States District Court for the Eastern District of New York (see infra p. 17).

**Plaintiff's July 24, 2001 Transfer to MDC**

Defendants argue that even if the Court were to assume that Plaintiff's claim against the MCC Defendants accrued on July 24, 2001, when Plaintiff transferred out of the MCC, his Complaint would had to have been filed no later than July 24, 2004 to be timely. (Defs. Mem. at 15.)[10] That is, Plaintiff would not be entitled to any equitable tolling of his MCC claims because by that date he had already exhausted his MCC administrative remedies. (See id.)[11]

Plaintiff contends that his claims against the MCC Defendants are timely even if the

---

[10] The Court's March 27, 2007 Decision and Order did, in fact, assume that Plaintiff's MCC claims accrued on July 24, 2001. See Gonzalez, 2007 WL 914238, at *3 ("[T]he MCC Claim . . . ripened no later than July 24, 2001 when Plaintiff was transferred out of the MCC."). The Second Circuit's June 22, 2011 Opinion also assumed that Plaintiff's MCC claims accrued on July 24, 2001. See Gonzalez, 651 F.3d at 324 n.4 ("Assuming that Gonzalez's MCC claims accrued on July 24, 2001 (the date he was transferred out of the MCC), those claims are timely only if the three-year statute of limitations period was tolled for at least 312 days").

[11] Defendants also argue that Plaintiff's administrative remedies "for alleged deprivations other than the one at issue in this litigation" are "irrelevant to this action," and that "it is of no import when Plaintiff actually received [notice of the] BOP's [final] decision." (Defs. Reply at 1.)

14

Court were to assume that they accrued on July 24, 2001 because "[t]he statute of limitations [was] tolled while Plaintiff was pursuing all of [his MCC and MDC administrative] remedies" and "would not [have] beg[u]n to run until plaintiff Gonzalez received actual notice of the [BOP Central Office's final] denial" of his last administrative appeal. (Pl. Opp'n at 10–11.)

As discussed supra at p. 12, the Court finds that Plaintiff's claims against the MCC Defendants accrued on May 2, 2000 when Plaintiff filed his first request for administrative remedy challenging his MCC SHU confinement. But, even assuming, arguendo, that Plaintiff's claims against the MCC Defendants accrued on July 24, 2001 when he was transferred, those claims would still be untimely because Plaintiff's May 2, 2000 Request was exhausted on November 15, 2000, i.e., prior to his transfer. See Gonzalez, 651 F.3d at 323–24. Having already exhausted his administrative remedies, Plaintiff would not be entitled to equitable tolling beyond July 24, 2001, and his three-year statute of limitations would have expired on July 24, 2004, well before he actually filed his Complaint on May 31, 2005. See id.

Plaintiff's argument that the Court should consider "all of the administrative remedies that plaintiff Gonzalez filed" (Pl. Opp'n at 10) is unpersuasive because, among other reasons, approximately sixty-five of those requests did not relate to Plaintiff's SHU confinement. (See supra p. 8–9.) And, while six requests did relate to Plaintiff's SHU confinement, three of those related to Plaintiff's confinement in MDC SHU, not his MCC confinement. (See supra p. 9.) With respect to the three requests that related to Plaintiff's confinement in MCC SHU (including the May 2, 2000 Request), all were exhausted prior to Plaintiff's transfer on July 24, 2011. (See Colvin Decl. ¶ 17 & Exs. 2, 12–13 (May 2, 2000 Request exhausted on November 15, 2000; May 23, 2000 Request exhausted on November 15, 2000; and June 21, 2000 Request exhausted on September 8, 2000)); Bakowski, 387 F. App'x at 11–12.

Finally, Plaintiff's argument that the statute of limitations "would not [have] beg[u]n to run until Plaintiff received actual notice of the [BOP Central Office's final] denial" of his last request for administrative remedy (Pl. Opp'n at 11) is unpersuasive. Actual notice is not required. See 28 C.F.R. § 542.18. BOP Regulation 542.18 provides that an appellant should consider his appeal denied if he receives no response from the BOP Central Office within 40 days of filing. See Mimms v. Carr, No. 09 Civ. 5740, 2011 WL 2360059, at *3–4 (E.D.N.Y June 9, 2011) ("If, at any stage, the inmate does not receive a response within the time allotted, he should consider his request or appeal to have been denied.").

### (2) Transfer to the Eastern District of New York Pursuant to the Second Circuit's June 22, 2011 Opinion

The Second Circuit instructed that "the District Court shall transfer Gonzalez's MDC claim to the United States District Court for the Eastern District of New York if it deems it proper to do so upon reexamination of Gonzalez's claims" because that claim is not a "clear loser." Gonzalez, 651 F.3d at 325. Such reexamination was to include "factual findings on the length of the administrative exhaustion period [and] its effect on the applicable statute of limitations." Id. As discussed supra pp. 11–16, the Court has determined (on reexamination) that Plaintiff's claims against the MCC Defendants are untimely by 563 days under the Second Circuit's guidance, notwithstanding that Plaintiff is entitled to 197 days of equitable tolling.

As noted, Defendants appear to concede that (some) claims against Warden Hasty and the MDC Defendants are timely (Defs. Reply at 9), and they also argue that the Court "must transfer the remaining portion of the action to the United States District Court for the Eastern District of New York." (Defs. Mem. at 19.) Plaintiff "consents to the transfer of this proceeding to the United States District Court for the Eastern District of New York." (Pl. Opp'n at 2.)

Having found that Plaintiff's claims against the MCC Defendants are untimely, and the parties having acknowledged that at least some of Plaintiff's claims against Warden Hasty and the MDC Defendants are timely, the Court finds that transfer of Plaintiff's remaining claims against Warden Hasty and the MDC Defendants to the United States District Court for the Eastern District of New York is appropriate pursuant to 28 U.S.C. §§ 1391(b) and 1404(a) and in accordance with the Second Circuit's June 22, 2011 Opinion. See Gonzalez, 651 F.3d at 325.

## V.  Conclusion & Order

For the foregoing reasons, Defendants' motion for partial summary judgment and transfer of venue [#81] is granted. The Clerk of Court is respectfully requested to transfer this case to the United States District Court for the Eastern District of New York.

Dated: New York, New York
September 28, 2012

_RMB_
**RICHARD M. BERMAN, U.S.D.J.**